**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CLAUDIO LOPEZ,

                            :

                 Petitioner,            **REPORT & RECOMMENDATION**

                            :

       -against-                 **11 Civ. 07729 (PAC)(MHD)**

                            :

HAROLD D. GRAHAM,

                            :

               Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:**


     Pro se petitioner Claudio Lopez seeks a writ of habeas corpus,
pursuant to 28 U.S.C. § 2254, challenging his 2008 conviction in
New York State Supreme Court, New York County, on a single count of
manslaughter in the first degree. The court sentenced Lopez to a
prison term of seventeen and a half years, which he is currently
serving.


     Petitioner asserts four claims in his habeas petition. He
contends: (1) that the trial court should have instructed the jury
on the lesser-included offense of second-degree manslaughter, (2)
that the trial judge abused his discretion under People v.
Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974), in allowing
cross-examination of petitioner concerning prior convictions that
were not probative of his credibility; (3) that the trial court

1

denied petitioner a fair trial by allowing the prosecutor to violate the judge's Sandoval ruling; and (4) that the judge violated Lopez's Sixth Amendment right to confront the witnesses when he restricted the defense attorney's efforts to cross-examine two of the State's witnesses. (Pet. for Writ of Habeas Corpus, dated Oct. 28, 2011 ("Pet.") at ¶¶ 12 (I)-(IV)).

Respondent opposes this petition. He contends that petitioner's Sandoval and lesser-included-offense claims are unexhausted and procedurally barred, and that all of his claims are meritless. (Resp. Br. in Opp'n to the Pet. for Writ of Habeas Corpus, dated Apr. 20, 2012 ("Resp. Br.") at 17, 19).

For the following reasons, we recommend that the writ be denied.

## I. **Facts and Procedural History**

Petitioner's conviction stemmed from the stabbing death of a man named Jeffrey Castro on upper Broadway on the evening of February 2, 2006. Witnesses at Broadway and 149th Street observed the two men arguing, and reported that when Castro, having punched Lopez, walked away in a southerly direction, Lopez retrieved a

2

knife on 149th Street, then followed Castro, accosted him from behind and stabbed him in the chest. Following petitioner's arrest on February 4, 2006, a New York County grand jury returned an indictment on February 10, 2006, charging him with one count of second-degree murder. Lopez went to trial on that charge and a lesser-included-offense charge of first-degree manslaughter, a proceeding that ended with an acquittal on the murder count and a mistrial on the manslaughter charge. (Lyons Decl. Ex. B at 2 & n.1).

On September 21, 2007 a grand jury returned a superceding indictment charging Lopez only with first-degree manslaughter. On May 14, 2008, Lopez went to trial on that charge before the Hon. William Wetzel, S.C.J., and a jury. At the conclusion of the trial, the jury convicted him on that single count. (Tr. 628).

## II. The Trial

A. The State's Case

The State offered the testimony of three eyewitnesses, Leonardo Hernandez Cruceta ("Cruceta"), Kim Lee ("Lee"), and Nilda O'Neil ("O'Neil"). (Id. at 139, 257). Cruceta had known Lopez for

3

four to five years. (Id. at 364). He testified that, while standing at the corner of Broadway and 149th Street, he had seen Lopez arguing with a Puerto Rican man, later identified as Jeffrey Castro. (Id. at 269, 277). Cruceta reported that the argument had escalated and that Castro, seemingly high on drugs, had punched Lopez twice in the face, knocking him to the ground. (Id. at 265-69). Castro then tried to get on top of Lopez while he was prone, but another man restrained the assailant and told him to leave the scene. (Id. at 317-18). Cruceta testified that he had noticed a small knife in Castro's hand, but he had not observed Castro threatening to use the knife or brandishing it at Lopez during their fight. (Id. at 270, 280, 283).

Lee testified that she had seen Lopez leave the group that had gathered around the combatants, and start to walk west towards Riverside Drive. (Id. at 142-44). She further narrated that Lopez had stopped near a gate and bent down to pick up an eight-to-twelve-inch "butcher knife." (Id. at 144-45). Lee reported that Lopez had then walked back to the southwest corner of 149th Street and Broadway (id. at 146), and proceeded to follow Castro down Broadway to 148th Street and then toward 147th Street. (Id. at 149, 155).

4

According to both Lee and Cruceta, Lopez eventually caught up to Castro (id. at 157-58), grabbed him from behind, turning him around to face him, and, with his left hand, stabbed Castro on the right side of his chest. (Id. at 159-60, 275-76). Lee saw Lopez's hand move back and forth two to three times, driving the blade deeper into Castro's chest. (Id. at 161). Castro immediately fell to the ground. (Id. at 162). Lee called 911 to report the stabbing. (Id. at 163). She testified that she later noticed a small knife on the ground next to Castro.[2] (Id. at 186-87). Another witness for the State, Nilda O'Neil, testified that she had seen Lopez run away from the scene carrying a twelve-inch knife and a plastic sheath, which she subsequently saw him dispose of near some garbage. (Id. at 241-44).

Paramedics transported Castro to St. Luke's Hospital, where he was pronounced dead soon after he had arrived. (Id. at 49-55, 58-59). The police recovered several items from the scene: a small knife, Castro's shirt and jacket, a large knife and homemade sheath that had been retrieved from atop a pile of garbage on the north side of 148th Street, and blood samples taken from the sidewalks of Broadway and Riverside Drive. (Id. at 59, 68, 75, 83, 94). Forensic

---

[2] Sergeant Kurt Webber testified that the knife found by Castro's body was around two to three inches long. (Trial Tr. 33-34).

5

analysis of the blood samples and the sheath revealed that they belonged to Lopez. (Id. at 364). Castro's blood was on both knives. (Id. at 364).

The State also presented testimony by Dr. Michael Greenberg of the Medical Examiner's office, who had performed an autopsy on Castro. (Id. at 383). Dr. Greenberg noted that Castro had abrasions on his hand, consistent with blunt-force trauma. (Id. at 387). The autopsy revealed a single "one tract" wound to the right side of Castro's torso. (Id. at 385). The tract reached through Castro's heart and into his lungs. (Id.). Toxicology tests revealed that Castro's blood alcohol level was ".1[]8" percent, which is "slightly more than double" the legal limit (0.8 percent) to operate a vehicle. (Id. 390-91). The toxicologist also found cocaine in Castro's blood. (Id. at 392). Dr. Greenberg could not render an opinion on the interaction of cocaine and alcohol. (Id. at 392).

## B. The Defense Case

Lopez testified on his own behalf. He contended that Castro had attacked him without provocation, breaking two of his teeth. (Id. at 428-30). He recounted that Castro had displayed a knife and

6

had threatened him with it. (Id. at 431-32). According to Lopez, he
then retreated along Broadway, while facing Castro. (Id. at 433).
He said that he had spotted a twelve-inch knife at a fruit stand
and had taken it for protection, hiding it in his jacket. (Id. at
433, 438).

Lopez further recounted that he had tried to seek haven in a
friend's apartment on 148th Street (id. at 435), but that no one
had answered the door. (Id. at 438). At some point, he testified,
Castro had blocked his path. (Id. at 439). He then wrapped his
jacket around his right hand and wielded the knife with the other
hand. (Id. at 439-40). According to Lopez, Castro slashed at him
twice (id. at 477), before he stabbed Castro in self-defense and
fled from the scene. (Id. at 441).

### III. **Post-Conviction Appeals**

Following sentencing, Lopez filed an appeal from his
conviction and sentence in the Appellate Division, First
Department. In support of that appeal he argued (1) that the trial
judge had abused his discretion in his Sandoval ruling by allowing
the prosecutor to cross-examine him about crimes that were not
probative of his credibility; (2) that he had been denied a fair

7

trial because the prosecutor had exceeded the scope of cross-examination permitted by the court's Sandoval ruling; (3) that the trial judge had denied petitioner his right to confrontation by improperly restricting defense counsel's cross-examination of the State's witnesses; (4) that the trial judge should have instructed the jury on the lesser-included offense of second-degree manslaughter; and (5) that the sentence imposed on him was excessive. (Lyons Decl. Ex. A 13-54).

On April 27, 2010, the Appellate Division affirmed petitioner's manslaughter conviction and sentence. People v. Lopez, 72 A.D.3d 593, 899 N.Y.S.2d 230 (1st Dep't 2010). The Court ruled that the trial judge had properly exercised his discretion in his Sandoval ruling, that -- with one exception -- the prosecutor had not violated the Sandoval ruling, and that the one violation was harmless. Id. The panel further held that the trial judge had not violated petitioner's right to confrontation because he had intervened only to correct errors by counsel in phrasing questions and had not impeded the attorney's ability to cross-examine the State's witnesses. Id. The Court next upheld the trial court's refusal to instruct the jury on second-degree manslaughter, noting that there was no reasonable view of the evidence that suggested that petitioner had acted recklessly. Id. Finally, the Court

8

declined to second-guess the sentence imposed on Lopez. Id.

Petitioner next sought leave to appeal to the New York State Court of Appeals. (Lyons Decl. Ex. F (Pet'r Letter, dated July 8, 2010 to N.Y. Ct. Of Appeals)). In his leave letter, he raised four issues: the denial of the second-degree-manslaughter jury instruction; the judge's Sandoval ruling; the prosecutor's violation of the Sandoval ruling; and the trial judge's asserted interference with cross-examination by defense counsel. (Id.) The Court of Appeals denied petitioner's leave request on August 23, 2010. People v. Lopez, 15 N.Y.3d 807, 908 N.Y.S.2d 166 (2010).

Petitioner timely filed his habeas petition with the Pro Se Clerk of this Court on October 28, 2011.

## **ANALYSIS**

### I. **Standard of Review**

The stringency of federal habeas review turns on whether the state courts have passed on the merits of a petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim

9

advanced, rather than on a procedural, or other, ground." <u>Sellan v.</u>
<u>Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. §
2254(d)). If the state court has addressed the merits, the
petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). <u>See</u>, <u>e.g.</u>, <u>Bell v. Cone</u>, 535 U.S. 685, 693-94
(2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000) (O'Connor,
J., concurring); <u>Besser v. Walsh</u>, 601 F.3d 163, 178 (2d Cir. 2010),
<u>vacated on other grounds sub nom. Portalatin v. Graham</u>, 624 F.3d 69
(2d Cir. 2010) (en banc); <u>Howard v. Walker</u>, 406 F.3d 114, 121-22
(2d Cir. 2005); <u>Brown v. Artuz</u>, 283 F.3d 492, 498 (2d Cir. 2002).

Clearly established federal law "'refers to the holdings, as
opposed to the dicta, of the Supreme Court's decisions as of the
time of the relevant state-court decision.'" <u>Howard</u>, 406 F.3d at
122 (quoting <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002)).
"[A] decision is 'contrary to' clearly established federal law 'if
the state court arrives at a conclusion opposite to that reached by

10

[the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Id. (quoting Williams, 529 U.S. at 413); see also Marshall v. Rodgers, 133 S.Ct. 1446, 1449 (2013).

What constitutes an "unreasonable application" of settled law is a somewhat murkier proposition. "'A federal court may not grant habeas simply because, in its independent judgment, the "relevant state-court decision applied clearly established federal law erroneously or incorrectly."'" Id. (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "'[s]ome increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions "so far off the mark as to suggest judicial incompetence."'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v.

11

Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord Richard S. v.
Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

Under the Supreme Court's more recent, and arguably more
stringent, interpretation of the statutory language, "[a] state
court's determination that a claim lacks merit precludes federal
habeas relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision." Harrington v. Richter,
131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S.
652, 664 (2004)). "Under § 2254(d), a habeas court must determine
what arguments or theories supported or . . . could have supported
the state court's decision; and then it must ask whether it is
possible fairminded jurists could disagree that those arguments or
theories are inconsistent with the holding in a prior decision of
[the Supreme] Court." Id. Under this more recent interpretation, a
federal habeas court has the limited "authority to issue the writ
in cases where there is no possibility fairminded jurists could
disagree that the state court's decision conflicts with [the
Supreme] Court's precedents." Id. In other words, to demonstrate an
'unreasonable' application of Supreme Court law, the habeas
petitioner "must show that the state court's ruling on the claim
being presented in federal court was so lacking in justification
that there was an error well understood and comprehended in

12

existing law beyond any possibility for fairminded disagreement."
Id. at 786-87.

As for the state courts' factual findings, under the habeas
statute "a determination of a factual issue made by a State court
shall be presumed to be correct. The applicant shall have the
burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S., 589 F.3d
at 80-81; McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see
also Rice v. Collins, 546 U.S. 333, 338-39 (2006).

## II. **Assessment of Petitioner's Claims**

Respondent initially argues that three of petitioner's claims
-- those relating to the Sandoval ruling, the prosecutor's cross-
examination of petitioner, and the trial court's refusal of a
lesser-included-offense instruction -- are unexhausted and
procedurally barred because Lopez did not frame those claims in
federal constitutional terms on his direct appeal. (Resp. Br. 15-
17). Although exhaustion of state-court remedies is required before
a petitioner may pursue relief in the habeas court, see 28 U.S.C.
§ 2254(b)(1), the court may bypass an exhaustion analysis if the
petitioner's claims are clearly meritless. 28 U.S.C. § 2254(b)(2)

13

("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see, e.g., Abuzaid v. Mattox, 726 F.3d 311, 321-22 (2d Cir. 2013); Mannix v. Phillips, 619 F.3d 187, 196 (2d Cir. 2010); Greiner v. Wells, 417 F.3d 305, 317 n.14 (2d Cir. 2005).

Since we find the claims pressed by Lopez to be groundless, we address them on the merits and therefore pretermit the exhaustion question. As for the substance of his arguments, since his petition appears simply to incorporate the points made by his counseled brief to the Appellate Division (see Pet. ¶ 12), we rely on that document as fully describing the arguments and analysis that petitioner proposes to advance in this proceeding. (See Lyons Decl. Ex. A at 13-49).

A. The Lesser-Included-Offense Claim

Lopez first argues that the trial court erred in declining to charge  second-degree manslaughter as a lesser-included offense. This argument fails for two reasons. First, the Supreme Court has not held that in a non-capital case the erroneous failure to give a lesser-included-offense instruction violates any constitutional

14

right of a defendant. Hence the Appellate Division's rejection of this claim cannot be said to have violated or unreasonably applied well-established Supreme Court precedent. Second, in any event, the ruling of the trial court was correct under state law.

The Supreme Court has held that in <u>capital</u> cases a defendant has a constitutional right to an instruction on a lesser-included offense if the evidence warrants it. <u>Beck v. Alabama</u>, 447 U.S. 626, 638 & n.14 (1980).[3] In the same decision, however, the Court expressly reserved the question of whether the Due Process Clause requires that the jury be given a lesser-included-offense charge in <u>non-capital</u> cases, <u>id.</u> at 638 n.14, and it has not yet resolved that question. In the wake of <u>Beck</u>, the Second Circuit has also declined, in the habeas context, to rule on whether there is a constitutional right to a lesser-included-offense charge in non-capital cases, stating that it is precluded from doing so because it would be creating a new constitutional rule, in violation of <u>Teague v. Lane</u>, 489 U.S. 288 (1989). <u>See</u> <u>Jones v. Hoffman</u>, 86 F.3d

---

[3] In <u>Beck</u>, the Court stated that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, Alabama is constitutionally prohibited from withdrawing that option from the jury in a capital case." 447 U.S. at 638.

46, 48 (2d Cir. 1996)[4]; see also White v. Connolly, 2012 WL 603705,
*1-2 (S.D.N.Y. Feb. 23, 2012) (citing cases); Rincon v. Burge, 2010
WL 6789121, at *30 (S.D.N.Y. Sept. 8, 2010); Jones v. Donnelly, 487
F. Supp. 2d 403, 409 (S.D.N.Y. 2007); Mannix v. Phillips, 390 F.
Supp. 2d 280, 295 (S.D.N.Y. 2005) (citing, inter alia, Jones, 46
F.3d at 48).[5]

Because the Supreme Court has explicitly chosen not to decide
whether there is a constitutional right to a lesser-included-
offense charge in non-capital cases, Beck, 447 U.S. at 638 n.14,
the Appellate Division's decision upholding the trial court's

---

[4] Since Jones was decided, the so-called "new rule" rule of
Teague has been superceded by section 2254(d)(1). See Morris v.
Reynolds, 264 F.3d 38, 46 & n.7 (2d Cir. 2001).

[5] In United States v. Zapata-Tamallo, 833 F.2d 25, 28 (2d Cir.
1987), an appeal from a federal conviction, the Second Circuit
stated, in dictum, that due process requires that a lesser-
included-offense charge be submitted to a jury "if the evidence
would permit a jury rationally to find [a defendant] guilty of
the lesser offense and acquit him of the greater." Id.
(alteration in original) (internal quotation marks omitted)
(quoting Hopper v. Evans, 456 U.S. 605, 612 (1982)). The Second
Circuit, however, has noted that courts in this Circuit have not
treated this statement as precedent, and it has since declined to
rule on the issue. Jones, 86 F.3d at 48 (quoting Rice v. Hoke,
846 F.2d 160, 164 (2d Cir. 1988)); Rice, 846 F.2d at 164 (stating
that the Second Circuit "has not yet ruled on" "whether due
process requires a lesser included offense instruction in a
noncapital case"); accord Knapp v. Leonardo, 46 F.3d 170, 179 (2d
Cir. 1995); Jones v. Speckard, 827 F. Supp. 139, 146 (W.D.N.Y.
1993) (in dictum) (citing cases), aff'd mem., 14 F.3d 592 (2d
Cir. 1993); Smithwick v. Walker, 758 F. Supp. 178, 187 (S.D.N.Y.
1991), aff'd mem., 948 F.2d 1278 (2d Cir. 1991).

16

ruling on this matter cannot be said to have been "contrary to...

clearly established Federal law, as determined by the Supreme Court

of the United States." 28 U.S.C. § 2254(d)(1). For much the same

reason, the challenged decision did not unreasonably apply "clearly

established Federal law," since the Supreme Court has not spoken to

the precise question and the Second Circuit has not suggested that

other Supreme Court case law has, by implication, established a

principle that denial of lesser-included-offense instructions in

non-capital cases may violate due process. See Beck, 447 U.S. at

638 n.14; Jones, 86 F.3d at 48; Durden v. Greene, 492 F. Supp. 2d

414, 423 (S.D.N.Y. 2007)(citing Williams v. Phillips, 433 F. Supp.

2d 303, 315 (W.D.N.Y. 2006); Peakes v. Spitzer, 2004 WL 1366056,

*13 (S.D.N.Y. June 16, 2004); Pritchett v. Portuondo, 2003 WL

22472213, *11 (S.D.N.Y. Oct. 31, 2003)).


     Alternatively, even if we ignored the absence of any

controlling legal authority for the proposition that the erroneous

denial of a lesser-included-offense charge constitutes a denial of

due process, the result in this case would not change. In deference

to the fact that the petitioner is a pro se litigant, we note that

an argument might be formulated for the notion that, based on prior

precedent, even in a non-capital case an egregiously erroneous

failure by a trial judge to provide a lesser-included-offense

17

charge might trigger a due-process problem if the error were sufficiently prejudicial to the defendant. That said, Lopez can make no such showing here.

Challenges to jury charges are generally not of constitutional dimension, and habeas relief is not usually granted for a claim that a jury charge violated state law. See, e.g., McGuire, 502 U.S. at 71-73 (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)). Nonetheless, if a defective instruction "infected the entire trial," the error may rise to the level of a due-process violation. Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (quotation omitted); see also Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); Davis v. Strack, 270 F.3d 111, 123, 131-32 (2d Cir. 2001). Otherwise stated, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147; accord Jackson v. Edwards, 404 F.3d 612, 624-25 (2d Cir. 2005) (noting that courts must examine whether denial of a justification charge was "'sufficiently harmful to make the conviction unfair'" (quoting Davis, 270 F.3d at 124)).

Of particular relevance here, a criminal defendant has a constitutional right to a "meaningful opportunity to present a

18

complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986)

(citing California v. Trombetta, 467 U.S. 479, 485 (1984)). The

right to present a defense is a "'minimum essential[] of a fair

trial.'" United States v. Almonte, 956 F.2d 27, 30 (2d Cir. 1992)

(quoting Chambers v. Missippi, 410 U.S. 284, 294 (1973)). As part

of this constitutional right, the defendant is entitled to "'a jury

charge that reflects any defense theory for which there is a

foundation in the evidence.'" United States v. Abcasis, 45 F.3d 39,

42 (2d Cir. 1995) (internal quotation marks omitted) (quoting

United States v. Johnson, 994 F.2d 980, 988 (2d Cir. 1993));

accord, e.g., United States v. Gil, 297 F.3d 93, 107 (2d Cir. 2002)

("'A criminal defendant is entitled to a jury charge that reflects

his defense. A conviction will not be overturned for refusal to

give a requested charge, however, unless that instruction is

legally correct, represents a theory of defense with basis in the

record that would lead to acquittal, and the theory is not

effectively presented elsewhere in the charge.'" (quoting United

States v. Vasquez, 82 F.3d 574, 577 (2d Cir. 1996))). The defendant

has a right to such an instruction even if the trial court believes

that the defense is "'tenuous.'" United States v. Bok, 156 F.3d

157, 163 (2d Cir. 1998) (quoting United States v. Dove, 916 F.2d

41, 47 (2d Cir. 1990)).

As the Second Circuit has noted, when confronted with a constitutional claim of this type, the habeas court must first consider whether state law required an instruction that the state court failed to grant. See Jackson, 404 F.3d at 621-24; Davis, 270 F.3d at 124-31. In this case the Appellate Division found no evidentiary basis to justify the requested charge. That finding by a mid-level state appellate court, in application of New York law, commands our presumptive deference. See, e.g., Rincon, 2010 WL 6789121 at *14 (citing inter alia Parron v. Quick, 869 F.2d 87, 90 (2d Cir. 1989); Powell v. Phillips, 2009 WL 929538, *16 (S.D.N.Y. April 7, 2009)); see also Universal Accupuncture Pain Servs. V. Quadrino & Schwartz, P.C., 370 F.3d 259, 265 (2d Cir. 2004). Since there is no basis to challenge the state appellate court's interpretation of state law, petitioner's lesser-included-offense claim must fail.

Section 300.50(1) of the New York Criminal Procedure Law addresses the appropriateness of charging the jury on a lesser-included offense. It states that,

> [i]n submitting a count of an indictment to the jury, the
> court in its discretion may, in addition to submitting the
> greatest offense which it is required to submit, submit in
> the alternative any lesser included offense if there is a
> reasonable view of the evidence which would support a

finding that the defendant committed such lesser offense but did not commit the greater. If there is no reasonable view of the evidence which would support such a finding, the court may not submit such lesser offense. Any error respecting such submission, however, is waived by the defendant unless he objects thereto before the jury retires to deliberate.

N.Y. Crim. Proc. Law § 300.50(1). In People v. Glover, 57 N.Y.2d 61, 453 N.Y.S.2d 660 (1982), the Court of Appeals read the seemingly discretionary language of section 300.50(1) as reflecting an entitlement of a defendant to such a charge in defined circumstances, and it specified a test for determining whether the defendant is entitled to a lesser-included-offense charge:

To establish entitlement to a lesser included offense charge, the defendant must make two showings. First, it must be shown that the additional offense that he desires to have charged is a "lesser included offense", i.e., that it is an offense of lesser grade or degree and that in all circumstances, not only in those presented in the particular case, it is impossible to commit the greater crime without concomitantly, by the same conduct, committing the lesser offense. That established, the defendant must then show that there is a reasonable view of the evidence in the particular case that would support a finding that he committed the lesser offense but not the greater.

Id. at 63, 453 N.Y.S.2d at 661.

When determining whether a jury should be charged with a lesser-included offense, the court must examine the evidence in the light most favorable to the defendant, although the jury may accept or reject any of the evidence presented to it. See, e.g., People v. Galvin, 104 A.D.2d 527, 528, 479 N.Y.S.2d 896, 898 (3d Dep't 1984) (citing People v. Henderson, 41 N.Y.2d 233, 236, 391 N.Y.S.2d 563, 566 (1976)), aff'd as modified, 65 N.Y.2d 761, 492 N.Y.S.2d 25 (1985). The focus of the analysis is on whether a jury could reasonably acquit defendant of the greater crime and convict him of the lesser crime, not whether there is persuasive evidence that defendant was guilty of the greater crime. See, e.g., People v. Hartman, 4 A.D.3d 22, 26-27, 772 N.Y.S.2d 396, 400 (3d Dep't 2004) (citing People v. Van Norstrand, 85 N.Y.2d 131, 136, 623 N.Y.S.2d 767, 770 (1995)). Here, an examination of the record amply supports the Appellate Division's conclusion that the jury could not have convicted Lopez of second-degree manslaughter since the evidence would not support a finding that he had acted with recklessness.

Petitioner was charged with first-degree manslaughter, in violation of New York Penal Law § 125.50(1). A person is guilty of this version of first-degree manslaughter when, "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law §

22

125.50.[7] In contrast to first-degree manslaughter, a person is guilty of second-degree manslaughter when "he recklessly causes the death of another person." N.Y. Pen. Law § 125.25.

Petitioner suggests that by not instructing the jury on second-degree manslaughter, the trial court violated his due-process rights, presumably because the jury could have convicted him of the lesser offense. We conclude, as did the Appellate Division, that there is no reasonable view of the record that warranted the lesser charge.

_____

[7] An alternative ground for a first-degree manslaughter conviction is defined in subsection (2), which provides for conviction when,

> [w]ith intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision.

Subdivision (a) of § 125.25 of New York Penal Law defines such a circumstance as one in "which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime." N.Y. Penal Law § 125.25(1)(a).

As noted, to commit first-degree manslaughter, the defendant must have acted with intent to inflict serious injury. As the Court of Appeals has held, "one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree." People v. Suarez, 6 N.Y.3d 202, 211, 811 N.Y.S.2d 267, 274 (2005). In this case, the Appellate Division concluded that the trial judge had properly declined to submit second-degree manslaughter to the jury  because there was no reasonable view of the evidence in which Lopez had not acted with the intent to inflict serious injury when he stabbed Castro. Lopez, 72 A.D.3d at 593-94, 899 N.Y.S.2d at 231. This ruling plainly was reasonable in view of the evidence.

"Intent may... be inferred from the defendant's conduct and the surrounding circumstances." Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1998) (citing Anderson v. Senkowski, 1992 WL 225576, at *4, (E.D.N.Y. 1992) (citing People v. Turner, 141 A.D.2d 878, 878, 529 N.Y.S.2d 898, 899 (2d Dep't 1988)))(quotations omitted). The trial evidence shows that after the initial physical altercation between Lopez and Castro, the defendant fetched a knife, grabbed Castro and stabbed him deeply in the chest. Moreover, in preparation for this attack, he wrapped his jacket around his arm to act as a shield to prepare for a knife fight.

24

(Tr. 440-41). Finally, petitioner admitted that he intended to stab Castro, stating that he "hit this person as a way to find some way to get away." (Tr. 441).[9]

In short, Lopez could not have been convicted of second-degree manslaughter since he acted with the intent required for first-degree manslaughter. Suarez, 6 N.Y.3d at 211-212, 811 N.Y.S.2d at 273. In this regard Lopez's testimony in support of his justification defense merited -- and received -- an instruction on that defense, see N.Y. Penal Law § 35.05, but did not justify a charge on a reckless-conduct theory since the evidence did not permit a finding that Lopez had acted without intent to cause serious injury or death. See, e.g. People v. Rivera, __ N.Y.__, 2014 WL 1356233, *__ (April 18, 2014) (citing Appellate Division decision in Lopez with approval) (single stab wound in circumstances manifesting intentional act and intent to cause serious injury or death precludes charge based on recklessness); People v. Henderson, 110 A.D.3d 1353, 1354, 973 N.Y.S.2d 863, 864 (3rd Dep't 2013) (defendant's admission of intent to stab victim and "nature

---

[9] Although Lopez insisted that he was fearful for his life, he plainly acted with intent. Accepting petitioner's self-defense testimony as true would entitle him to acquittal, not conviction of the lesser offense of second-degree manslaughter. See, e.g., Hartman, 4 A.D.3d at 26-27, 772 N.Y.S.2d at 400 (citing Van Norstrand, 85 N.Y.2d at 136, 623 N.Y.S.2d at 770).

and force of the fatal stab wound" show it was intentional, precluding conviction of second-degree manslaughter). Compare People v. Reichel, 110 A.D.3d 1356, 1363-64, 975 N.Y.S.2d 470, 478 (3d Dep't 2013)(driving drunk and at extremely high speed justifies second-degree manslaughter conviction).

Since petitioner's demand for a lesser-offense instruction was not supported by the record, he was not denied his due-process rights when no such charge was given. The decision of the Appellate Division to affirm the trial court's ruling was not contrary to, or an "unreasonable application" of, federal law under 28 U.S.C. § 2254(d)(1) and did not rest on any findings not permitted by the evidentiary record. See 28 U.S.C. § 2254(d)(2).

B. The Sandoval Ruling

Petitioner next argues that the trial court's Sandoval ruling denied him a fair trial since it allowed the prosecutor to cross-examine him on crimes and other bad acts that had no, or minimal, probative weight as to his credibility. (Tr. 18). This claim is groundless.

At the _Sandoval_ hearing, the State sought to introduce a 1999 misdemeanor conviction for possession of marijuana, as well as a 2000 felony conviction for third-degree attempted criminal possession of a controlled substance. (_Id._). The prosecutor argued that the 2000 conviction was relevant because petitioner had been arrested for that crime on 149th Street and Broadway, the same corner where the incident between petitioner and Castro had taken place, thus tending to show that Lopez had ties to the area and may have had reason to know where to find the murder weapon. (_Id._ at 20). The prosecutor also sought to question Lopez about a 2000 felony conviction in Puerto Rico for aggravated battery, carrying and use of a firearm without a license, and possession of a loaded firearm. (_Id._ at 24-25).

The State also sought to introduce evidence of petitioner's unlawful immigration status. (_Id._ at 20-21). In particular, the prosecutor asked to question Lopez about his misrepresentation to New York Criminal Justice Agency ("CJA") officials concerning his country of origin. (_Id._). According to the prosecutor, petitioner had stated that he was from Puerto Rico, but he was actually from the Dominican Republic. (_Id._ at 21). The prosecutor also wanted to bring up the fact that petitioner had reentered the United States after having been previously deported as a convicted alien. (_Id._ at

27

26-27). Finally, the prosecutor sought to refer to two criminal complaints alleging that petitioner had threatened two individuals on the corner of 149th and Broadway. (Id. at 22-23).

Defense counsel opposed the use of the 1999 possession conviction as irrelevant and prejudicial. (Id. at 27). He then also argued that the Puerto Rico crimes should be precluded because Lopez was not the defendant in that case. (Id. at 28). Finally, he opposed any reference to petitioner's immigration status, arguing that it was not probative and was prejudicial. (Id. at 29).

The court denied the prosecution's request to use the two criminal complaints about threats to members of the public, finding them to be problematic, since they would "create a [t]rial within a [t]rial." (Id. at 31). The judge allowed the prosecutor to question Lopez about the 1999 misdemeanor drug conviction and the 2000 felony drug conviction, but he precluded the State from alluding to the underlying facts of those crimes. (Tr. 30). Nonetheless, the judge ruled that if Lopez denied any familiarity with the area where the stabbing had occurred, the prosecutor could refer to the locus of the 2000 drug conviction solely to rebut that denial. (Id. at 30). Next, the court ruled that the prosecutor could bring up the fact that petitioner had been deported and had

28

subsequently reentered the country, finding that this sequence reflected "moral turpitude that goes to the issue of credibility." (Id.). Finally, the judge ruled that the Puerto Rico felonies could only be identified by title. (Id. at 31).

In the face of this record, the Appellate Division held that "the court's Sandoval ruling balanced the appropriate factors and was a proper exercise of discretion." Lopez, 72 A.D.3d at 593, 899 N.Y.S.2d at 230-31. In so holding, the panel found that the trial judge had permitted the admission of evidence of crimes that were "probative of [petitioner's] credibility and not unduly prejudicial." Id.

We begin by noting that although Lopez does not explicitly invoke any specific constitutional provision to undergird his Sandoval argument, we interpret the petition and the record "to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006). In substance, Lopez may be heard to argue that the Sandoval rulings denied him a fair trial under the Due Process Clause.

Analyzing this argument, we note that admission of prior convictions is not itself a constitutional violation. See Spencer

v. Texas, 385 U.S. 554, 560-561 (1967); <u>Michelson v. United States</u>, 335 U.S. 469, 482-86 (1948); <u>see</u> <u>also</u> <u>United States v. Belt</u>, 514 F.2d 837, 839, 849-850 (D.C. Cir. 1975) (en banc) (holding that a statute making evidence of a prior conviction "mandatorily admissible" did not violate the Constitution). There seems to be no disagreement -- and petitioner does not seem to dispute -- that a rule such as that embedded in <u>Sandoval</u>, permitting the admission of such impeachment evidence under a balancing test between prejudice and probative value, is in principle valid under the Constitution. <u>See</u> <u>generally</u> Fed. R. Evid. 404(b), 609(a) (requiring a balancing test between prejudice and probative value).

Furthermore, a state court's ruling as to the admissibility of evidence of prior convictions for impeachment purposes will rarely reach constitutional dimension. <u>See</u> <u>Luce v. United States</u>, 469 U.S. 38, 42-43 (1984)(suggesting that a federal court's preliminary ruling under Rule 609(a) was "a question not reaching constitutional dimensions"); <u>see</u> <u>generally</u> <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984) (errors of state law do not form a sufficient basis for habeas relief); <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998) (admission without limiting instruction of testimony revealing that defendant was a convicted felon may have been an error of state law, but was not per se an error of federal

constitutional dimension justifying habeas relief). To establish a
constitutional violation, a habeas petitioner must demonstrate that
the application of the <u>Sandoval</u> rule "was of such a magnitude as to
deny fundamental fairness to the criminal trial." <u>Woods v. Estelle</u>,
547 F.2d 269, 271 (5th Cir. 1977); <u>see</u>, <u>e.g.</u>, <u>Dixon v. McGovern</u>,
2010 WL 3260459, *13 (S.D.N.Y. June 9, 2010); <u>Butler v. Graham</u>,
2008 WL 2388740, *5 (S.D.N.Y. June 12, 2008); <u>Allaway v. McGinnis</u>,
301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004); <u>Sutton v. Herbert</u>, 39 F.
Supp. 2d 335, 338 (S.D.N.Y. 1999). "The evidence introduced must be
'so extremely unfair that its admission violates the fundamental
conceptions of justice,' i.e., where such evidence is 'sufficiently
material to provide the basis for conviction or to remove a
reasonable doubt that would have existed on the record without
it.'" <u>Johnson v. Conway</u>, 2010 WL 3942897, *4 (E.D.N.Y. Oct. 6,
2010)(quoting <u>Taylor v. Poole</u>, 2010 WL 419968, *9 (W.D.N.Y. Jan.
29, 2010)(quoting <u>Dunnigan</u>, 137 F.3d at 125)).

   The trial court's <u>Sandoval</u> ruling in this case plainly did not
deny petitioner a fundamentally fair trial. The court allowed
reference to his prior drug convictions but limited the references
to the category of the crimes and precluded any specification of
details. This ruling is at least generally consistent with both
federal and state court decisions, which have taken a balancing

approach in assessing whether proof of prior narcotics convictions may be used to challenge a defendant's credibility. See, e.g., People v. Smith, 18 N.Y.3d 588, 593-94, 942 N.Y.S.2d 5, 9 (2012); United States v. Ortiz, 553 F.2d 782, 784-85 (2d Cir. 1977)(recognizing trial-court discretion to admit evidence of prior narcotics conviction for impeachment); United States v. Vasquez, 840 F. Supp. 2d 564, 568-71 (E.D.N.Y. 2011)(applying Rule 609 to assess impeachment potential of narcotics conviction); United States v. Brown, 2009 WL 728448, *3-4, *9-10 & n.9 (E.D.N.Y. March 10, 2009)(applying Rule 609 to narcotics conviction in a drug case); Daniels v. Loizzo, 986 F. Supp. 245, 249-51 (S.D.N.Y. 1997(addressing Rule 609 in civil suit but citing criminal cases).[10] The authorized reference to petitioner's Puerto Rico conviction, involving assault with a deadly weapon, was justified, if for no other reason, as potentially relevant to rebut Lopez's justification defense. See, e.g., People v. Williams, 28 A.D.3d 1005, 1007-08, 814 N.Y.S.2d 353, 355 (3rd Dep't 2006). It also

_____

[10] It bears noting in this regard that introduction of the felony drug conviction would have been presumptively admissible in federal court. See Fed. R. Evid. 609(a)(1)(B) (such evidence "must be admitted... if the probative value of the evidence outweighs its prejudicial effect"); see also United States v. Moran-Toala, 726 F.3d 334, 345 (2d Cir. 2013)(emphasizing "inclusionary approach" to admission of prior crimes under Rule 404(b)). That too suggests that there is no basis for a constitutional challenge to the trial court's Sandoval ruling. See, e.g., Ayala v. Hernandez, 712 F. Supp. 1069, 1077 (E.D.N.Y. 1989).

appears to fall well within the line of New York court decisions that allow introduction of evidence of various prior crimes as "indicative of defendant's willingness to place his own interests ahead of those of others and society." People v. Poole, 73 A.D.3d 1219, 1220, 900 N.Y.S.2d 776, 778 (3rd Dep't 2010)(citing cases). As for petitioner's immigration status and his misrepresentations to the CJA, they were plainly relevant to his credibility. See, e.g., Bonilla v. Jaronczyk, 354 Fed. App'x 579, 583 (2d Cir. Dec. 2, 2009); see generally Sandoval, 34 N.Y.2d at 377, 357 N.Y.S.2d at 856 ("Commission of perjury or other crimes or acts of individual dishonesty, or untrustworthiness (e.g., offenses involving theft or fraud, bribery, or acts of deceit, cheating, breach of trust) will usually have a very material relevance, whenever committed.").

In any event, the Appellate Division's conclusion that the trial judge had properly exercised his discretion in admitting evidence of matters "probative of [petitioner's] credibility", and that those matters were not unduly prejudicial, Lopez, 72 A.D.3d at 593, 899 N.Y.S.2d at 230-31, surely cannot be said to have violated petitioner's right to a fundamentally fair trial. Still more plainly, that decision was not contrary to, nor an unreasonable application of, Supreme Court precedent.

33

In sum, petitioner's challenge to the trial judge's <u>Sandoval</u> ruling cannot justify habeas relief.

## C. <u>The Alleged Violation by the Prosecutor of the Sandoval Ruling</u>

During the <u>Sandoval</u> hearing, the court limited admission of the petitioner's 1999 misdemeanor conviction and his 2000 felony conviction to the identification of the crime and -- if the petitioner denied any connection with 149th Street and Broadway -- the locus of the felony only. (<u>Sandoval</u> Tr. 30). The petitioner contends that the prosecutor violated this ruling, and <u>Sandoval</u> generally, by asking him about his association with an alleged drug dealer named Leito and then questioning him about his use of an alias. (Pet. ¶ 12 (II)).

On cross-examination, the prosecutor asked Lopez whether he was familiar with the neighborhood where the stabbing had taken place. (<u>Id.</u> at 449). Lopez did not deny familiarity and stated that he had lived in that neighborhood. (<u>Id.</u>). The prosecutor then asked Lopez whether he knew a man named Leito. (<u>Id.</u> at 448). Lopez admitted he knew Leito. (<u>Id.</u> at 450). Then the following exchange took place:

34

[Prosecutor] Leito sells cocaine; doesn't he?

[Defense counsel] Objection, Judge.

[The Court] Overruled.

[Petitioner] Can't say yes or no, I never had any kind of contact with him there.

[Prosecutor] You never dealt with Leito on 149th and Broadway; is that your testimony?

[Defense] Objection.

[The Court] Sustained, sustained.

(Id.). At that point defense counsel moved for a mistrial, which the court denied. (Id.). The prosecutor then modified his question slightly, "You never saw Leito on the corner of 149th and Broadway?" (Id.). The court overruled defense counsel's further objections, and cross-examination continued on other topics. (Id. at 451-85).

The prosecutor also questioned Lopez as to whether he had ever used an alias, specifically "Miguel Santana Morrell", which Lopez denied. (Id. at 480). This inquiry was apparently triggered by Lopez's insistence that he had been born in Puerto Rico (id.), whereas the immigration folder for Lopez listed Morrell as a name associated with him. (Tr. 486). The prosecutor also asked Lopez whether he had ever been deported. (Id. at 481). Lopez denied having ever being deported and also denied having committed a crime

35

in Puerto Rico. (Id. at 481-82).

Defense counsel consistently objected to this line of questioning, asserting that the questions were outside of the scope of the Sandoval ruling and unfairly prejudicial. (Id. at 480-82). In each instance, defense counsel's objections were overruled. (Id.). In partial response, the trial judge observed that Lopez had put his alias into issue by claiming that he had been born in Puerto Rico, since his actual birthplace was the Dominican Republic. (Id. at 486).

The Appellate Division concluded that the prosecutor's questioning of Lopez had not been improper except, by implication, his reference to Leito, and that this Sandoval violation had been harmless. These findings -- the one implicit and the other explicit -- do not reflect constitutional error by the panel, much less constitute rulings that are contrary to, or unreasonable applications of, Supreme Court precedent.

To establish a due-process violation based on prosecutorial misconduct, petitioner must show that, in the context of the entire trial, he was denied a fundamentally fair trial. See, e.g., Greer v. Miller, 483 U.S. 756, 765 (1987); Darden v. Wainwright, 477 U.S.

168, 181-83 (1986); <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Blissett v. LeFevre</u>, 44 924 F.2d 434, 440 (2d Cir. 1991); <u>cf.</u> <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990). Habeas relief may not be granted on this claim unless the "incident made respondent's trial so fundamentally unfair as to deny him due process." <u>Donnelly</u>, 416 U.S. at 645.

The prosecution's cited conduct did not deny petitioner a fundamentally fair trial. The questioning of Lopez about an alias was at least relevant to his credibility. <u>See</u> <u>People v. Walker</u>, 83 N.Y.2d 455, 461-62, 611 N.Y.S.2d 118, 122 (1994). Moreover, since Lopez had testified falsely as to his place of birth -- indeed, he subsequently admitted that he was not legally in the country (Tr. 482) -- it was reasonable for the trial judge to find that he had opened the door to an inquiry about the very name found in his immigration file.

As for the reference to Lopez's familiarity with Leito, the Appellate Division held that the apparent error was harmless. That finding is not subject to meaningful challenge. When a state court concludes that an error was harmless, that finding is subject to the same standard of deference as is any other legal conclusion. <u>Zappulla v. New York</u>, 391 F.3d 462, 467 (2d Cir. 2004) (citing

37

Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) (per curiam)). In assessing the state court's harmless-error determination, we must determine whether that court found that "the People proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained,'" and whether the state court's finding to that effect was "objectively []reasonable." Id. (quoting Mitchell, 540 U.S. at 17-18). Even if the reference to Leito may have suggested to the jury that petitioner dealt drugs, the court had previously allowed reference to two prior narcotics convictions of the defendant, and hence the additional, and very vague, reference to the possibility that Leito was a drug dealer -- a suggestion as to which Lopez, in substance, described himself as agnostic -- can scarcely be viewed as having any significant impact. Moreover this trial involved a charge of homicide, which was, on its face, entirely unrelated to any possible narcotics activity by Lopez, and hence the impact of the prosecutor's brief reference to Leito was almost certainly minimal. See generally Brown, 2009 WL 728448, *3 ("degree of similarity between the past crimes and this crime" is relevant consideration in Rule 609 analysis of balance between probative-weight and prejudice)(citing cases); cf. United States v. Van Putten, 2005 WL 612723, at *6 (S.D.N.Y. Mar. 15, 2005) (trial court did not unduly prejudice defendant by admitting evidence of his drug dealing in a murder trial since such charges were

38

probative of the underlying conspiracy charge and they were less serious than the murder charge).

Furthermore, to the extent that the Appellate Division deemed that reference to be harmless, that finding is entitled to deference under the AEDPA, and we see no substantial basis for questioning it. E.g., Zappulla, 391 F.3d at 467 (habeas court may only reverse harmless-error determinations that are objectively unreasonable). To find a constitutional error not to be harmless, the court must determine that it "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)(quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see Fry v. Pliler, 551 U.S. 112, 118-20 (2007)(holding Brecht applies under AEDPA). Given the focus of the trial on the discrete question of whether Lopez had intended to inflict serious injury on Castro when he concededly stabbed him during a continuing argument, the brevity of the reference to Leito, the absence of any inculpatory answer by Lopez to the questions involving Leito, and the substantial weight of the eyewitness testimony about the encounter between Lopez and Castro, the harmlessness holding of the Appellate Division was unexceptionable.

D. <u>The Cross-Examination Claim</u>

Petitioner next argues that the trial judge effectively denied him his right to confront the witnesses against him when the court assertedly interfered with his lawyer's impeachment of two of the State's eyewitnesses on cross-examination. (Pet. ¶ 12 (III)). Respondent contends that this claim lacks merit since the state court's application of the law was neither unreasonable nor contrary to federal law. (Resp. Br. 33). We agree.

The cross-examination in question involved efforts by defense counsel to highlight the fact that both Ms. Lee and Mr. Cruceta had made pre-trial statements that were seemingly inconsistent with their trial testimony. In describing the relevant points, we limit ourselves to the snippets of cross-examination cited by Lopez on his appeal to the Appellate Division. (Lyons Decl. Ex. A at 37-42). In doing so, we note that counsel conducted fairly extensive cross of both eyewitnesses with no objection by the prosecutor and no interjections by the judge. (E.g. Tr. 194-202, 220-22, 235-37, 309-11, 315-19, 320-22).

Defense counsel first tried to impeach Ms. Lee by highlighting a possible inconsistency between her current and past testimony

40

concerning the number of times that Lopez had stabbed Castro, since Lee at trial recounted that Lopez had stabbed Castro once but had assertedly earlier testified that petitioner had stabbed the victim three times. (Tr. 191, 214-16, 218-19, 227). At various points the prosecutor objected to the form of the question, but the witness made clear that she had meant to say that Lopez had stabbed Castro once and had then pushed the knife further into the victim's chest multiple times. (Tr. 214-16). Defense counsel also brought up Ms. Lee's written statement to the police to the effect that she had crossed the street to make a 911 call, and he challenged her credibility because apparently there was a telephone on her side of the street, thus presumably indicating that there was no need to cross the street. (Id. at 217-21). There was no interference with this cross. Later, defense counsel brought out the fact, based on Ms. Lee's prior testimony, that she had initially not volunteered to the police who arrived on the scene that she had seen the incident. (Tr. 223-27). Although the court and counsel ended up debating an abstruse point as to whether it was proper for the attorney to ask the witness whether she recalled that prior testimony, under questioning by the judge the witness conceded that she did. (Tr. 226). Finally, when counsel was asking Ms. Lee about minor aspects of her movement on the day in question, the judge occasionally interjected that the form of his question was

41

incorrect, but allowed him to reformulate if he wished. (Tr. 234-35).

As for the cross-examination of Mr. Cruceta, defense counsel questioned him about apparent inconsistencies between his prior written statement and his testimony. (Id. at 283-85). The statement signed by Cruceta apparently reported that Castro had approached petitioner while brandishing a knife. (Id. at 285). At trial, however, Cruceta testified he had not seen Castro with a knife. (Id. at 283-84). Defense counsel then sought to impeach him with the prior statement, although he apparently never showed the document to Cruceta, and the witness continued to insist that he had not signed a statement that referred to Castro having displayed a knife. (Tr. 284-86). At one point after the witness insisted that he had not made such a representation, and that he did not recall signing such a statement (Tr. 284-85), defense counsel and the court debated whether the attorney had asked the witness if he had signed the statement rather than whether he recalled it, but the lawyer never followed up by asking that question or (apparently) showing the witness the document. (Id. at 285). Indeed, when later offered the opportunity to read the written statement to the jury or to put it into evidence, defense counsel refused. (Tr. 296-98). Defense counsel later objected in general terms to the judge's

42

purported limitation on his cross-examination of the State's witnesses about prior assertedly inconsistent statements, arguing that he had asked the witnesses whether they had made the statements, not whether they recalled having made them. Whatever the significance of this somewhat obscure distinction, the judge adhered to a rule that the proper form of the question in such a circumstance was whether the witness recalled having made the prior statement. (Id. at 303-05).

Given this record, the Appellate Division held that "there was no impairment of [petitioner's] right of confrontation" since "[t]he court's intervention involved the form of questions and the necessary foundation for impeachment by way of prior inconsistent statements." Lopez, 72 A.D.3d at 593, 899 N.Y.S.2d at 231. That ruling, which was plainly correct, did not invade any constitutional right of the petitioner.

As noted, petitioner characterizes his claim as one arising under the Confrontation Clause, which guarantees the right of an accused "to be confronted with the witnesses against him." U.S. Const. Amend. VI. Alternatively, his argument may be interpreted as resting on the assertion that he was denied his right to present a defense. Under neither can he prevail.

43

The right of confrontation is not satisfied merely by the physical presence of the witness; rather, "a defendant must have the opportunity to cross-examine an individual who testifies against him." Washington v. Walsh, 2010 WL 423056, *6 (S.D.N.Y. Feb. 5, 2010)(citing Davis v. Alaska, 415 U.S. 308, 315 (1974)). Nonetheless, that right is not absolute, and in appropriate circumstances it must give way to "'accommodate other legitimate interests in the criminal process.'" Id. (quoting Chambers v. Mississippi, 410 U.S. 284, 295 (1973)). In short, the Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish." Van Arsdell v. Delaware, 475 U.S. 673, 679 (1986)(quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1986)(emphasis in original)). Thus "'trial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Michigan v. Lucas, 500 U.S. 145, 149 (1991)(quoting Van Arsdell, 475 U.S. at 679).

To similar effect, the right to present a defense "does not give criminal defendants carte blanche to circumvent the rules of

44

evidence. Restrictions on a defendant's presentation of evidence are constitutional if they serve 'legitimate interests in the criminal trial process' and are not 'arbitrary or disproportionate to the purposes they are designed to serve.'" Almonte, 956 F.2d at 390 (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)); see, e.g., Bowman v. Ercole, 2010 WL 6620879, *28 (S.D.N.Y. Sept. 1, 2010); Santana v. Artus, 2009 WL 6382488, *24 (S.D.N.Y. July 1, 2009).

Our review of the cited portions of the trial transcript reflects that defense counsel was able to cross-examine both Ms. Lee and Mr. Cruceta effectively and that, to the extent that the judge either intervened or upheld objections by the prosecutor, he was seeking to clarify the often confusing testimony and to uphold governing rules as to how the questioning of witnesses about prior inconsistent statements was to proceed. Moreover, in making these rulings the court did not prevent the attorney from establishing that the witnesses had in fact made such prior arguably conflicting statements.

In any event, the trial judge's limitations on cross-examination were entirely reasonable. The prior statements of both Lee and Cruceta involved acts (e.g., a 911 call) that had taken place quite some time before trial commenced, and they had both

testified in the prior trial, which had ended in a mistrial (see
Tr. 2-3, 224, 295); thus a higher degree of specificity in
questioning them regarding those statements may have been necessary
to afford Cruceta and Lee the "opportunity to explain or deny the
prior inconsistent statement." United States v. Harvey, 547 F.2d
720, 722 (2d Cir. 1976). In colloquy during cross-examination of
both witnesses, the trial judge stressed the importance of "the
form of questions and the necessary foundation for impeachment".
Lopez, 72 A.D.3d at 593, 899 N.Y.S.2d at 230. Although given an
opportunity to correct his formulation, defense counsel failed to
do so. Most notably, he repeatedly ignored the trial judge's
procedure for impeachment. (Id. at 224-26, 289-91, 295, 324). Thus,
to the extent that counsel was unable to obtain satisfactory
responses to his questions, that did not involve any inappropriate
conduct on the part of the trial judge. See, e.g., Bernstein, 417
F.2d at 644 ("[T]he judge insisted upon a technical procedure to be
used to lay a foundation and defense counsel persistently did not
follow such procedure thereby causing the judge to sustain
objections to the use of the statement."). In short, petitioner's
confrontation claim is plainly meritless.

        Even if petitioner's legal theory were characterized
alternatively as describing a violation of his right to present a

46

defense, the result would not differ. In the context of a limitation on cross-examination, the appropriate analysis is substantially the same as for Confrontation Clause claims. <u>See</u>, <u>e.g.</u>, <u>Drake v. Woods</u>, 547 F. Supp. 2d 253, 264-69 (S.D.N.Y. 2008); <u>Roberts v. Scully</u>, 875 F. Supp. 182, 188-90 (S.D.N.Y.), <u>aff'd</u>, 71 F.3d 406 (2d Cir. 1995). As noted, the rulings of the trial judge did not deny defense counsel the ability to challenge the credibility of the eyewitnesses and surely did not deprive Lopez of a fundamentally fair trial.

<u>CONCLUSION</u>

For the reasons stated, we recommend that the writ be denied and the petition be dismissed with prejudice. We further recommend that the court deny a certificate of appealability as petitioner has failed to present a claim worthy of appellate review.

Pursuant to Rule 72 of the Federal Rules of Civil procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Paul A. Crotty, Room 735, 500 Pearl Street, New

York, New York 10007, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: New York, New York
       April 14, 2014

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

48

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Claudio Lopez
#08-A-3639
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021

Mr. Paul B. Lyons
New York State Assistant Attorney General
120 Broadway
New York, New York 10271